UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE WOOD, et al.,

     Plaintiffs,

                              Case No. 20-10994

v.                             Honorable Victoria A. Roberts

MICHIGAN DEPARTMENT OF
CORRECTIONS,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 47]

## I.    INTRODUCTION

Michelle Wood ("Wood") and her partner of approximately 17 years, Loretta Smith ("Smith"), bring this employment discrimination suit against the Michigan Department of Corrections ("MDOC") – Wood's former, and Smith current, employer.

Plaintiffs allege MDOC subjected them to a hostile work environment, discriminated against them based on their sex and sexual orientation, and retaliated against them for engaging in protected activity. Particularly, Wood claims MDOC denied her promotions on several occasions based on her sex and/or sexual orientation and retaliated against her for complaints

about discrimination.  Smith alleges MDOC demoted her to the midnight shift in retaliation for Wood filing complaints.

Before the Court is MDOC's motion for summary judgment.  [ECF No. 47].  It is fully briefed; no hearing is necessary.

The Court **GRANTS** MDOC's motion.

## II.    BACKGROUND

Wood worked for MDOC for over 25 years as a corrections officer. Since 2000, Wood has been assigned to the Thumb Correctional Facility ("TCF").

Wood alleges she made numerous, unanswered complaints regarding disparate treatment she received during her employment with MDOC, and that MDOC denied her promotions based on her sex and/or sexual orientation and subjected her to numerous baseless disciplinary actions in retaliation because she filed complaints.  She claims MDOC constructively discharged her in October 2019.

Smith began working for MDOC as a corrections officer in 2003.  In 2015, Smith transferred to TCF, and in 2016, MDOC promoted her to sergeant.  Smith claims that MDOC "demoted [her] to midnight shift" in January 2019, "[f]ollowing complaints by Plaintiff Wood regarding disparate treatment."  [ECF No. 1, PageID.13].

Wood and Smith have been in a committed relationship since 2003.

On April 18, 2019, Wood filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging MDOC denied her a promotion on the basis of her sex and/or sexual orientation, and in retaliation for complaint filing. The EEOC issued a right to sue letter on December 18, 2019.

Plaintiffs filed this action in state court on March 9, 2020. MDOC removed the case to this Court.

Plaintiffs allege six causes of action: (1) discrimination (disparate treatment) on the basis of sex and sexual orientation in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"); (2) hostile work environment in violation of ELCRA; (3) retaliation in violation of ELCRA; (4) hostile work environment in violation of Title VII, 42 U.S.C. § 2000e-2; (5) sex and sexual orientation discrimination (disparate treatment) in violation of Title VII; and (6) retaliation in violation of Title VII. The ELCRA claims are on behalf of both Plaintiffs; the Title VII claims are on behalf of Wood only.

The Court previously dismissed Count IV – hostile work environment in violation of Title VII – for failure to exhaust administrative remedies.

3

## III.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The movant bears the initial burden to inform the Court of the basis for its motion; it must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies its burden, the non-moving party must set forth specific facts showing a genuine issue for trial.  *Id*. at 324.  Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the "mere existence of a scintilla of evidence in support of the [non-movant's] position"; the evidence must be such that a reasonable jury could find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record.  Fed. R. Civ. P. 56(c)(3).  The Court's function at

the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## IV.   ANALYSIS

In its motion, MDOC addresses all the incidents in Plaintiffs' work history which could support their claims, including several that Plaintiffs did not allege or assert. In their response, Plaintiffs fail to address several incidents that MDOC discusses.  By failing to address certain incidents, Plaintiffs waive any claim they may have regarding those incidents, and the Court need not address them.  The Court focuses only on those allegations/claims Plaintiffs specifically address in their response brief.

### A.   Statute of Limitations

MDOC says Wood alleges several incidents outside the applicable statute of limitations for her Title VII and ELCRA claims.  It says the Court should dismiss Wood's ELCRA and Title VII claims to the extent they are based on allegations arising outside the applicable limitations period.

Defendants acknowledge that acts outside the statute of limitations are not actionable but say the Court can still consider them for background purposes.

### i.     Wood's ELCRA Claims

Under the ELCRA, a plaintiff must bring any claims within 3 years. Mich. Comp. Laws § 600.5805(10); *Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 472 Mich. 263, 284 (2005).

Plaintiffs filed the complaint on March 9, 2020.  Therefore, any of Wood's ELCRA claims that are based on allegations/incidents which occurred before March 9, 2017 are time-barred.  *See id.*  The Court need not address them; they are DISMISSED.

### ii.     Wood's Title VII Claims

To bring a Title VII action, a plaintiff must file a timely charge of employment discrimination with the EEOC, obtain a right-to-sue letter from the EEOC, and file a timely complaint in federal court.  *See Townsend v. Rockwell Automation, Inc.*, 852 Fed. Appx. 1011, 1013-14 (6th Cir. 2021); 42 U.S.C. § 2000e–5(e)(1), (f)(1).  A plaintiff alleging discrimination in a "deferral state," such as Michigan, must file a charge with the EEOC within 300 days of the alleged discriminatory act.  *Id.* at 1014; § 2000e–5(e)(1).

Wood filed an EEOC charge on April 11, 2018.  This complaint is timely only with respect to alleged discrimination occurring on or after June 15, 2017 – i.e., within the 300-day period before Wood filed her EEOC charge.  *See Townsend*, 852 Fed. Appx. at 1014 ("the complaint is timely

only with respect to alleged discrimination occurring on or after November 17, 2017, i.e., within the 300-day period before [plaintiff] filed her … EEOC charge on September 13, 2018").  Accordingly, the only incidents at issue for Wood's Title VII claims are those which occurred during the 300-day period before Wood filed her April 11, 2018 EEOC charge – i.e., from June 15, 2017 to April 11, 2018.

The Court DISMISSES any of Wood's Title VII claims which are based on acts occurring before June 15, 2017.  The Court limits its discussion below to Wood's allegations which are not time-barred.

**B.    Disparate Treatment (Counts I and V)**

**i.    Employment Discrimination Framework**

The Court analyzes Plaintiffs' Title VII and ELCRA claims using the same evidentiary framework.  *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

"A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination."  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).  Since Plaintiffs do not present direct evidence of discrimination, they must prove disparate treatment through the *McDonnell Douglas/Burdine* burden-shifting

7

framework.  *Id*.; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

(1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

This framework first requires a plaintiff to establish a *prima facie* case

of discrimination. *Johnson*, 215 F.3d at 572.  If plaintiff does this, "a

mandatory presumption of discrimination is created and the burden shifts to

the defendant to 'articulate some legitimate, nondiscriminatory reason for

the employee's rejection.'" *Id*. at 573 (citation omitted).  An employer who

provides a legitimate, non-discriminatory reason for its decision is entitled

to summary judgment unless the plaintiff can rebut the employer's

explanation by demonstrating that the proffered reason was actually a

pretext to hide unlawful discrimination. *Id*.  To establish that the proffered

reason was a pretext, a plaintiff must show that the reason: (1) had no

basis in fact; (2) was not the actual reason; or (3) was insufficient to explain

the defendant's action.  *Id*.  "A reason cannot be proved to be 'a pretext for

discrimination' unless it is shown both that the reason was false, and that

discrimination was the real reason."  *Id*. (citation omitted).

To establish a *prima facie* case of employment discrimination, a

plaintiff must show: (1) she is a member of a protected class; (2) she was

qualified for her job; (3) she suffered an adverse employment action; and

(4) she was treated differently than a similarly situated employee outside

the protected class for the same or similar conduct.  *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999).

### ii.   MDOC is Entitled to Summary Judgment on Plaintiffs' Disparate Treatment Claims (Counts I and V)

Plaintiffs pled disparate treatment claims on behalf of Wood and Smith under the ELCRA in Count I and on behalf of Wood under Title VII in Count V.  However, in rebutting MDOC's motion, the only disparate treatment allegation Plaintiffs address is Wood's failure to promote claim.

Particularly, Plaintiffs summarily state:

> Defendants [*sic*] do not dispute that Plaintiff Wood was in a protected class and qualified for her job.
>
> Plaintiff Wood was repeatedly denied promotional opportunities due to her gender, sex, and/or sexual orientation. In April 2016, November 2017, and January 2018, she applied for the position of Corrections Transportation Officer, a position for which she was highly qualified and had the most experience. Each time the position was given to a less qualified, male counterpart. (Exhibit 2, Wood dep.)

[ECF No. 51, PageID.5781-82]. Plaintiffs also discuss a gender stereotyping claim with respect to discipline Wood received, which relates to her disparate treatment claims.

MDOC says it is entitled to summary judgment on Wood's disparate treatment claims because: (1) MDOC's investigations of her were not

adverse actions; (2) Wood cannot identify a similarly situated, non-protected employee whom MDOC treated differently for similar conduct/rules violations; (3) a legitimate, non-discriminatory reason existed for Wood's discipline – i.e., she violated MDOC work rules – and Wood cannot show that the reason was pretext for unlawful discrimination; and (4) as to her failure to promote claim, Wood cannot show she was qualified for the positions.  The Court agrees.

The Court need not discuss each of MDOC's arguments.  It is clear that Wood fails to establish the fourth element of her *prima facie* case. That is, Wood fails to identify a similarly situated non-protected employee who: (1) violated the same MDOC rules that she did; and (2) MDOC either did not discipline or disciplined less severely.

Moreover, even if Wood established a *prima facie* case, MDOC satisfies its burden to provide a legitimate, non-discriminatory reason for disciplining Wood – i.e., she violated MDOC work rules – and Wood fails to show that that reason was a mere pretext for unlawful discrimination.

Thus, MDOC is entitled to summary judgment on Wood's disparate treatment claims related to her discipline and gender stereotype allegations.

MDOC is also entitled to summary judgment on Wood's failure to promote claim.

To establish a *prima facie* failure to promote claim, Wood must establish: "(1) she belongs to a protected class; (2) she applied for and was qualified for the position; (3) she was considered for and denied the position . . .; and (4) an individual of similar qualifications who was not a member of the protected class received the promotion."  *Crane v. Mary Free Bed Rehab. Hosp.*, 634 Fed. Appx. 518, 524 (6th Cir. 2015). Wood fails to do so.

First, Wood's claim that MDOC denied her a promotion in April 2016 is time-barred.  *See supra*.

Wood's conclusory statements regarding the other positions are insufficient to establish a *prima facie* case. *See Celotex*, 477 U.S. at 324 (requiring party to "go beyond the pleadings" and support assertions by citing to particular materials in the record); *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992) (a party opposing a summary judgment motion must identify specific facts showing a genuine issue for trial, and she must do so "with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies"); Fed. R. Civ. P. 56(c)(1)(A).  Among other things, Wood fails to establish who

11

received the positions instead of her or that those individuals had similar qualifications, and she is incorrect that MDOC does not dispute that she was qualified for the positions.

With respect to the 2018 position, MDOC specifically demonstrates that Wood was not qualified to even interview for the position because she had active discipline on her record, and the position required applicants to have no active discipline. [*See* ECF No. 47, PageID.3726-27; ECF No. 47-22, PageID.4765-66].

For the 2017 position, while Wood initially qualified and interviewed for the position, MDOC shows that a hiring freeze went into effect before the hiring process was complete. [*Id.*]. And pursuant to the MDOC collective bargaining agreement, MDOC had to fill the position with a transportation officer who was laid off from a different MDOC facility. [*Id.*]. Because Wood was not a transportation officer from that facility, she was not eligible. [*Id.*].

The Court GRANTS MDOC summary judgment on Plaintiffs' disparate treatment claims (Counts I and V).

## C.    Hostile Work Environment (Count II)

To establish a *prima facie* case of hostile work environment under the ELCRA, a plaintiff must show: (1) she belonged to a protected group; (2)

she was subjected to communication or conduct on the basis of sex; (3)

she was subjected to unwelcome sexual conduct or communication; (4) the

unwelcome sexual conduct or communication was intended to or in fact did

substantially interfere with her employment or created an intimidating,

hostile, or offensive work environment; and (5) respondeat superior.

*Haynie v. State*, 468 Mich. 302, 307-08 (2003) (citation omitted).

"A hostile work environment claim is actionable only when, in the

totality of the circumstances, the work environment is so tainted by

harassment that a reasonable person would have understood that the

defendant's conduct or communication had either the purpose or effect of

substantially interfering with the plaintiff's employment, or subjecting the

plaintiff to an intimidating, hostile, or offensive work environment."  *Radtke*

*v. Everett*, 442 Mich. 368, 398 (1993).  To succeed, a plaintiff must show

her "workplace is permeated with 'discriminatory intimidation, ridicule, and

insult[]" that is 'sufficiently severe or pervasive to alter the conditions of

[her] employment and create an abusive working environment.'" *Harris v.*

*Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).

In determining whether an environment is sufficiently hostile or

abusive, the Court must consider the "frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).  "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  *Id.* at 788.

Plaintiffs allege they were subjected to a hostile work environment based on their sex and/or sexual orientation.

MDOC says it is entitled to summary judgment because: (1) Smith admits she did not experience harassing behavior based on her sex or sexual orientation; (2) none of the conduct Wood alleges was pervasive; and (3) Wood failed to file complaints regarding her alleged claims of harassment, so there is no respondeat superior. The Court agrees.

Smith never filed any complaints regarding harassment or a hostile work environment, and she admits that she was not harassed in the workplace.  [ECF No. 47-23, PageID.4774, 4475-76].

MDOC is entitled to summary judgment on Smith's hostile work environment claim.

MDOC is also entitled to summary judgment on Wood's claim.

In support of her claim, Wood alleges: (1) her supervisor, Frank Bernstein, "is a known homophobe" who made comments in the past such

14

as "I can't stand faggots" and "faggots make me sick"; (2) she has been

referred to as a "dyke," called a "carpet muncher," has been told that

"Stanley Steamer has nothing on you," and has had a beaver and a taco

put as the desktop background on her computer.

Although these allegations of harassment could support a hostile

work environment claim, MDOC is correct that Wood fails to establish the

fifth element of hostile work environment – respondeat superior.

Respondeat superior liability exists when an employer has notice of

harassment and fails to take appropriate corrective action. *See Chambers*

*v. Trettco, Inc.*, 463 Mich. 297, 318-19 (2000). "An employer, of course,

must have notice of alleged harassment before being held liable for not

implementing action." *Radtke*, 442 Mich. at 396-97.

Wood fails to show MDOC had notice of her alleged harassment.

She did not file a complaint, and she cannot say when the alleged incidents

occurred or who made the offensive comments to her.

Wood did file a complaint against Bernstein for following/surveilling

her and her male shift partner when they travelled to McLaren Hospital for

hospital duty. However, when interviewed about the complaint by MDOC

investigators, Wood said she did not believe Bernstein's conduct was

based on her sex or sexual orientation. [*See* ECF No. 47-9, PageID.3943].

Wood's failure to show MDOC had notice entitles MDOC to summary judgment.

### D.     Retaliation (Counts III and VI)

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) defendant knew of the exercise of protected rights; (3) defendant took adverse employment action against her, or she was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.  *Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000).

Since Plaintiffs do not present direct evidence of retaliation, they must prove retaliation through the same *McDonnell Douglas* burden-shifting framework that applies to discrimination claims.  *Halfacre v. Home Depot, U.S.A., Inc.*, 221 Fed. Appx. 424, 431 (6th Cir. 2007).  Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to defendant to articulate a legitimate reason for its employment action. If defendant meets that burden, plaintiff can prevail only by showing that the articulated reason is false or pretextual.  *Id.*

### i. Smith's Retaliation Claim

Smith alleges she suffered adverse employment action when MDOC "demoted" her to the midnight shift; she says MDOC "punished [her] for her support of Plaintiff Wood." [ECF No. 51, PageID.5773].

MDOC is entirely correct that Smith "does not allege she personally participated in any protected activity before her shift change. Instead, she alleges she was moved to midnights in retaliation for complaints made by Wood." [ECF No. 47, PageID.3740]. *See* ECF No. 1, PageID.13 ("Following complaints by Plaintiff Wood regarding disparate treatment, … Smith was demoted to midnight shift. . . ."). This is insufficient to set forth a retaliation claim. Smith must demonstrate that <u>she</u> engaged in protected activity.

MDOC is entitled to summary judgment on Smith's retaliation claim.

### ii. Wood's Retaliation Claims

Wood claims that in retaliation for filing discrimination complaints, MDOC denied her promotions and subjected her to baseless disciplinary actions which led to her constructive termination in October 2019. This claim fails for the same reasons her failure to promote claim fails, *see supra*.

With respect to her constructive discharge claims, Wood says MDOC's "'stacking' of charges eventually culminated in [her] having to

17

extricate herself from MDOC, a constructive discharge." [ECF No. 51,

PageID.5773].  Wood alleges MDOC subjected her to the following

unjustified disciplinary investigations:

> (1) September 2017: MDOC investigated Wood after an anonymous letter accused her of having an inappropriate sexual relationship with a prisoner.  Investigation cleared Wood of any wrongdoing.
>
> (2) November 2017: During a routine shakedown, Wood was found with a hard eyeglass case – contraband under MDOC policy.  Wood agreed to a written reprimand – the lowest discipline level – as part of a settlement agreement.
>
> (3) January 2018: MDOC investigated Wood after finding communications between a prisoner and his father – a former MDOC Sergeant who knew Wood – referencing Wood.  Investigation cleared Wood of any wrongdoing.
>
> (4) February 2018: Wood was written up after she took a service dog in training from the dog's trainer without authorization (Wood was not part of the dog training program).  The investigation (video) showed Wood played with the dog rather than perform her job duties and let the dog off its leash in the facility.  MDOC disciplined Wood – as well as two male employees – for violating multiple work rules. Wood received a four-day suspension under MDOC's progressive discipline policy.

MDOC does not dispute that Wood engaged in protected activity or

that it knew she did so.  Indeed, Wood: (1) filed a complaint against

Bernstein in March 2017 for surveilling her and her male shift partner as

they travelled to hospital duty; (2) sent an email in December 2017

complaining that only white males were hired as transportation officers; (3) filed an EEOC charge in April 2018; (4) sent an email in September 2018 to the MDOC Director alleging discrimination and retaliation; and (5) sent an email to the MDOC Director in January 2019 alleging discrimination and retaliation against Smith due to her transfer to the midnight shift.

MDOC argues that: (1) investigations which cleared Wood are not adverse employment actions; (2) Wood fails to show a causal connection between her protected activity and any adverse action; and (3) legitimate, non-discriminatory reasons exist for the employment actions against Wood, and Wood cannot show that the reasons were pretext for discrimination.

MDOC is entitled to summary judgment on Wood's retaliation claim.

> ### a. Investigations Which Cleared Wood and Did Not Result in Discipline Are Not Adverse Employment Actions

As MDOC argues, the investigations which cleared Wood of any wrongdoing and did not result in any discipline are not adverse actions.

An employment action is "materially adverse" for purposes of a retaliations claim when it likely "would 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Lahar v. Oakland Cty.*, 304 Fed. Appx. 354, 357 (6th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). "[N]ormally petty slights, minor

annoyances, and simple lack of good manners will not create such deterrence." *Id*. Whether an action is materially adverse is an objective standard, which requires the Court to consider the "reactions of a *reasonable* employee." *Id.* (quoting *Burlington*, 548 U.S. at 68-69).

Actions resulting in a significant change in employment status – such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits – constitute an adverse action. *See Halfacre*, 221 Fed. Appx. at 431. Actions which fall short of a significant change in employment status constitute an adverse action if they "significantly impact an employee's wages or professional advancement." *See id.* at 433.

Investigations which cleared Wood did not result in a significant change in employment status and did not significantly impact Wood's wages or professional advancement. In fact, Wood fails to show the investigations which cleared her of wrongdoing impacted her at all. They do not constitute adverse employment actions. *Id.*

**b.   Wood Fails to Show a Causal Connection Between Protected Activity and Adverse Actions**

The investigations which led to Wood's discipline constitute adverse actions. However, as MDOC argues, Wood fails to establish a causal connection between her protected activity and the disciplinary actions.

Wood fails to meaningfully address the causation element in her response.  She merely states: (1) she "has met all 4 prongs of a prima facie retaliation claim"; (2) "[b]ut for [her] complaints of discrimination, adverse employment actions would not have been taken"; and (3) the "retaliatory actions would clearly dissuade a reasonable employee from making or supporting charges of discrimination."  [ECF No. 51, PageID.5772-73].  In the factual section, Wood also states that "there is an issue of fact of *who* sent [the anonymous] letter [accusing Wood of having an inappropriate sexual relationship with a prisoner] and *why* it was sent in such close temporal proximity to the completion of the Bernstein/McLaren parking lot investigation."  [*Id*., PageID.5765].

Wood's conclusory statements fail to satisfy her burden to show a causal connection between her protected activity and the adverse employment actions.  *See Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 769 (6th Cir. 2008) ("To demonstrate a causal connection between a materially adverse action . . . and the exercise of protected rights, a plaintiff *must proffer evidence* sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." (citation and internal quotation marks omitted; emphasis added)).  Although temporal proximity is relevant, Sixth Circuit precedent is clear that "mere temporal proximity

between an assertion of Title VII rights and a materially adverse action, without other indicia of retaliatory conduct, is not sufficient to establish the causal connection element of a retaliation claim." *Id.* at 769-70.

Wood fails to set forth a *prima facie* case of retaliation.

### c.   MDOC Shows Legitimate, Non-Discriminatory Reasons for Employment Actions and Wood Cannot Demonstrate the Reasons Were Pretext

Even if Wood could establish a *prima facie* case of retaliation, MDOC would still be entitled to summary judgment because it satisfies its burden to articulate legitimate, non-discriminatory reasons for disciplining Wood – i.e., Wood violated MDOC policy – and Wood fails to show the reasons were pretext for unlawful discrimination. *Halfacre*, 221 Fed. Appx. at 431.

### d.   Wood Fails to Establish a Claim for Constructive Discharge

MDOC says the evidence does not support Wood's constructive discharge claim.  The Court agrees.

 To establish a constructive discharge claim, a plaintiff must demonstrate that: (1) the defendant deliberately created intolerable working conditions, as perceived by a reasonable person; and (2) the defendant did so with the intention of forcing plaintiff to quit.  *Lindsey*, 295 Fed. Appx. at 770.  A constructive discharge exists where plaintiff shows that "working

conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.*

In determining whether a reasonable person would have felt compelled to resign, the Court considers the following factors: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Id*. (citation omitted).

As MDOC argues, Wood fails to produce any evidence demonstrating intolerable working conditions – let alone that MDOC created intolerable working conditions – or that MDOC tried to force Wood to quit.  In addition, none of the factors which are relevant to determining whether a reasonable person would have felt compelled to resign exists.

Wood fails to produce evidence to support her constructive discharge claim.  MDOC is entitled to summary judgment on this claim.

## V.   CONCLUSION

For the above reasons, the Court **GRANTS** MDOC's motion for summary judgment [ECF No. 47] in its entirety.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  January 7, 2022